#### IN THE UNITED STATES COURT OF APPEALS
#### FOR THE FIFTH CIRCUIT

No. 18-41189
Summary Calendar

United States Court of Appeals
Fifth Circuit
**FILED**
August 1, 2019
Lyle W. Cayce
Clerk

KENISHA S. BOYD,

    Plaintiff - Appellant

v.

TEXAS DEPARTMENT OF CRIMINAL JUSTICE,

    Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 2:15-CV-708

Before BENAVIDES, HIGGINSON, and ENGELHARDT, Circuit Judges.
PER CURIAM:*

    Plaintiff-Appellant Kenisha S. Boyd ("Boyd") appeals the district court's judgment, which enforced the settlement agreement between Boyd and her former employer, Defendant-Appellee Texas Department of Criminal Justice ("TDCJ"). Finding that Boyd has not shown that the district court abused its discretion in enforcing the settlement agreement, we AFFIRM.

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-41189

## I.   PROCEDURAL HISTORY

Boyd is an African-American female who began working as a parole officer for TDCJ in 2005.  On October 9, 2014, Boyd left her employment with the TDCJ.

On May 11, 2015, after receiving the notice of the right to sue from the Equal Employment Opportunity Commission, Boyd filed a Title VII suit against TDCJ in federal district court, alleging racial discrimination and retaliation claims.  On October 2, 2015, Boyd and TDCJ filed a Joint Advisory to the Court Regarding Mediator, stating that the "parties have agreed that they will seek to have this cause of action mediated before Magistrate Judge Keith Giblin."  The district court appointed Magistrate Judge Giblin as the mediator.

On January 6, 2016, a mediation was conducted by the magistrate judge.  After several hours of mediation, the magistrate judge stated on the record that the parties had reached an "amicable result – solution in this case."  The magistrate judge continued as follows:  "What I'll do is I'll dictate the terms of the settlement into the record and I'll ask the attorneys from each side to voice whether or not that's their understanding of the settlement."  The magistrate judge announced that it was his understanding that (1) TDCJ agreed to pay Boyd $9,875 in full consideration of her claims; (2) TDCJ wanted it on the record that the appropriate State authority would have to approve the settlement; (3) TDCJ agreed to denote in Boyd's personnel file that she had left voluntarily for personal reasons; and (4) both parties would pay their own costs.

The magistrate judge then asked Boyd's attorney, Ms. Davis-Smith, whether those were the terms of the settlement, and she responded "Yes, Judge."  Counsel for TDCJ also agreed on the record that those were the terms of the settlement and clarified that "since it does go through the State of Texas

2

Case: 18-41189      Document: 00515089034     Page: 3     Date Filed: 08/23/2019
Case 2:15-cv-00708-JRG   Document 57-1   Filed 08/23/19   Page 3 of 8 PageID #: 407

settlement process, that can take upwards to 180 days." The magistrate judge then stated: "That's the norm, everyone knows that." The docket sheet minute entry provides that the "parties requested and the court would recommend that the parties be given 180 days to submit closing documents." The next day, the magistrate judge filed a Mediator's Report stating that "[i]n accordance with the Court's order, a mediation conference was held on January 6, 2016. The conference resulted in settlement. All parties and counsel were present."

On March 4, 2016, Boyd and TDCJ, through their attorneys, filed a joint motion to stay or abate the proceedings. The joint motion provided that on January 6, 2016, "the parties successfully mediated all claims in this matter" with the magistrate judge. The joint motion also stated that "[o]nce the agreement was read into the record and affirmed by the parties, TDCJ made an announcement that it would take approximately six (6) months for the settlement to be 'officially' approved by the state of Texas." Additionally, although the settlement release had been drafted, it had not been approved by the state. Thus, the parties requested until June 30, 2016 "to prepare and finalize the terms of their agreement." The district court issued an order granting the motion to stay until June 30, 2016.

On July 13, 2016, the parties filed an amended joint motion to stay the proceedings that contained the same language stating that the agreement had been read into the record and affirmed by the parties. The motion further stated that the parties were still waiting on the approval of the state of Texas and requested the stay until August 31, 2016. The district court granted the motion to stay the proceedings.

On August 24, 2016, counsel for Boyd, Ms. Shelly Davis-Smith, filed a motion to withdraw as counsel, stating that she was unable to effectively communicate with Boyd. Boyd consented to the motion, and TDCJ did not oppose the motion. The court granted the motion to withdraw. The next day,

Case: 18-41189      Document: 00515089034     Page: 4     Date Filed: 08/23/2019
Case 2:15-cv-00708-JRG   Document 57-1   Filed 08/23/19   Page 4 of 8 PageID #: 408

No. 18-41189

Boyd filed a motion to substitute Timberly J. Davis as her attorney of record, which the district court granted.

On September 1, 2016, Boyd, through her new counsel, filed an opposed motion to vacate the settlement agreement. The motion alleged that Boyd had informed her attorney that she wanted to proceed to trial and that Boyd had never signed any release or agreement. The motion also argued that Boyd reasonably inferred that TDCJ's counsel lacked the authority to bind TDCJ because the agreement needed further approval. TDCJ filed an opposition to the motion to vacate the settlement, stating that the parties agreed on the record as to the terms of the settlement agreement as set forth by the magistrate judge. The opposition also provided that the approval needed was for payment of the money from the state treasury and not as to the terms of the settlement agreement.

The district court denied Boyd's motion to vacate the settlement agreement, finding that there was a "binding settlement between the parties, notwithstanding Boyd's subsequent refusal to sign the settlement documents." Boyd appealed this order to the Fifth Circuit. Because there was no final decision by the district court, the appeal was dismissed for lack of jurisdiction.[1]

On September 14, 2018, the district court held a status conference, and the parties agreed to further discussions before the magistrate judge. The district court issued an order staying the case. However, the subsequent discussions were unfruitful.

---

[1] Meanwhile, TDCJ also filed a motion for summary judgment, arguing that Boyd's race discrimination and retaliation claims should be dismissed on the merits. Boyd filed a response arguing that the motion for summary judgment should be denied; or in the alternative, further discovery should be allowed. The district court denied the motion for summary judgment without prejudice while the previous appeal was pending before this Court.

No. 18-41189

On November 16, 2018, TDCJ filed a motion to enforce the settlement agreement. On December 11, 2018, the district court held a hearing on the motion to enforce the settlement agreement. The district court concluded that Boyd's attorney, Ms. Davis-Smith, agreed to the terms of the settlement agreement on Boyd's behalf and in her presence at the January 6, 2016 mediation. Boyd did not challenge the settlement when the magistrate judge articulated the terms of the settlement agreement. Further, it was not until almost seven months later that Boyd first indicated to the court that she opposed the settlement agreement and moved for substitute counsel to vacate it. Thus, the court concluded that Boyd was bound by the terms of the January 6, 2016 settlement agreement and entered judgment. Boyd timely filed a notice of appeal.

## II.  ANALYSIS

Boyd contends that the district court erred in finding that the settlement agreement was valid and enforceable. This Court reviews a district court's order enforcing a settlement agreement for abuse of discretion. *Quesada v. Napolitano,* 701 F.3d 1080, 1083 (5th Cir. 2012). "The validity and enforcement of a Title VII settlement agreement are matters of federal law." *Id.* (footnote omitted). "[F]ederal law requires that a settlement of a Title VII claim be entered into 'voluntarily and knowingly' by the plaintiff." *Fulgence v. J. Ray McDermott & Co.,* 662 F.2d 1207, 1209 (5th Cir. 1981) (citations omitted). "Absent a factual basis rendering it invalid, an oral agreement to settle a Title VII claim is enforceable against a plaintiff who knowingly and voluntarily agreed to the terms of the settlement *or* authorized his attorney to settle the dispute." *Id.* (emphasis added).[2]

---

[2] Under federal law, there is not a requirement that a settlement be reduced to writing. *Fulgence,* 662 F.2d at 1209.

5

No. 18-41189

Boyd argues that the agreement is not enforceable because TDCJ could not have had actual knowledge of her acceptance either through her words or deeds. Boyd is correct that she remained silent on the record during the mediation on January 6, 2016. However, her attorney did not remain silent. As previously set forth, after the magistrate judge announced on the record that the parties had "come up with an amicable result – solution in this case," he articulated the terms of the settlement agreement. The magistrate judge asked Boyd's attorney if those were the terms of the settlement, and she responded affirmatively. Thus, contrary to Boyd's assertions otherwise, TDCJ had actual knowledge of Boyd's acceptance through her counsel. Our caselaw makes clear that an attorney of record is presumed to have authority to enter into a settlement agreement for her client. *Quesada,* 701 F.3d at 1083. The party seeking to vacate the settlement has the burden of proving that the "attorney had no right to consent to its entry." *Id.* & n.8. Boyd points to an email she sent to her attorney after the mediation in which she inquires about the "status of things [with respect to] proceeding to trial." This email was sent a week *after* the mediation in which Boyd's counsel accepted the settlement agreement. We have explained that emails sent to counsel after the settlement offer had been accepted "have no bearing on the validity of the settlement." *Id.* at 1084. Additionally, in the order appointing the magistrate judge as the mediator, the district court expressly stated that the Mediation Plan requires the presence of all parties, representatives, and professionals "with full authority to negotiate a settlement." Boyd has failed to demonstrate with affirmative proof that her counsel had no right to consent to the settlement agreement on January 6, 2016. *Id.* at 1083.

Boyd also relies on the fact that she refused to sign the settlement documents. This argument has no merit. "If a party to a Title VII suit who has previously authorized a settlement changes his mind when presented with

Case: 18-41189    Document: 00515089034    Page: 7    Date Filed: 08/23/2019
Case 2:15-cv-00708-JRG   Document 57-1   Filed 08/23/19   Page 7 of 8 PageID #: 411

No. 18-41189

the settlement documents, that party remains bound by the terms of the agreement." *Fulgence,* 662 F.2d at 1209 (citations omitted).

Finally, Boyd asserts that TDCJ placed a condition precedent on its offer when it included the condition that the Attorney General and Texas State Comptroller must approve the settlement. Boyd therefore argues that because the condition precedent of approval did not happen until almost nine months after the date of the mediation, there was no contractual obligation created and no contract formed. We are not persuaded by this argument. There are two types of conditions precedent. *Crest Ridge Constr. Grp., Inc. v. Newcourt, Inc.,* 78 F.3d 146, 150 (5th Cir. 1996). "A condition precedent to the formation of a contract prevents the formation of a contract except upon realization of the condition." *Id.* (citation omitted). "A condition precedent to an obligation to perform, on the other hand, does not prevent contract formation, but does prevent a duty to perform from arising except upon realization of the condition." *Id.* (citation omitted).

In *Scott v. Livingston,* a prisoner contended that TDCJ did not intend to be bound by the settlement agreement involving a First Amendment claim because the state attorneys representing TDCJ did not have the "final authority to approve the settlement, which required approval by the Attorney General, Governor, and Comptroller of Texas." 628 F. App'x 900, 903 (5th Cir. 2015). That is the same condition precedent contained in the instant settlement agreement. This Court rejected the prisoner's argument, explaining that it was a condition precedent that "in no way negates TDCJ's intention to be bound." *Id.* Because that opinion is unpublished and interpreted Texas law, it is not controlling. Nonetheless, it is persuasive authority for holding that the condition of approval from the state authorities was a condition precedent to an obligation to perform and thus, did not prevent the instant settlement agreement. *Cf. Crest Ridge Constr. Grp., Inc., v.*

Case: 18-41189    Document: 00515089034    Page: 8    Date Filed: 08/23/2019
Case 2:15-cv-00708-JRG   Document 57-1   Filed 08/23/19   Page 8 of 8 PageID #: 412

No. 18-41189

*Newcourt, Inc.,* 78 F.3d 145, 150 (5th Cir. 1996) (stating that, based on the extensive dealings between the parties, the jury could have concluded that the "subject to credit department approval" term was at most a condition precedent to the obligation to perform and did not prevent contract formation) (Texas and Uniform Commercial Code case).

Further, at the mediation hearing on January 6, 2016, when TDCJ's attorney sought to clarify that the approval process from the State of Texas could take upwards of 180 days, the magistrate judge responded that was the "norm, everyone knows that." The magistrate judge's comments on the record indicate that this is a well-known, common practice. *Cf. Westlake Petrochemicals, L.L.C. v. United Polychem, Inc.,* 688 F.3d 232, 239–240 (5th Cir. 2012) (noting that the evidence showed that industry custom permitted payment and credit terms to be completed after formation of the buy and sell contract and thus such a term was only a condition precedent to the obligation to perform) (Texas and Uniform Commercial Code case). In the instant case, we are persuaded that the approval condition was a condition precedent to the obligation to perform and did not prevent the formation of the settlement agreement. Accordingly, Boyd has not shown that the district court abused its discretion by ordering the enforcement of the settlement agreement.

### III. CONCLUSION

For the above reasons, the district court's judgment is AFFIRMED.